UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-61456-CIV-SEITZ/O'SULLIVAN

CROSS COUNTRY HOME SERVICES, INC.,

                Plaintiff,

v.

HOME SERVICE USA CORP., and
HOMESERVE PLC,

                Defendants.
_____/

## ORDER DENYING HSUSA'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment. Defendants move for summary judgment on all claims in Plaintiff's three-count complaint, which alleges claims for (1) trademark infringement under 15 U.S.C. § 1114(a); (2) false designation of origin under 15 U.S.C. § 1125(a); and (3) common law unfair competition. Defendant Homeserve, plc filed its Motion to Dismiss for Lack of Personal Jurisdiction simultaneously with this motion. The Court granted the Motion to Dismiss. Thus, Defendant Home Service USA Corp. (HSUSA) is the only remaining Defendant.

HSUSA moves for summary judgment on Plaintiff's claims on the grounds that there is no likelihood of confusion between its uses of the marks at issue and Plaintiff's use, and that HSUSA's usage is entitled to the defense of fair use. HSUSA also moves for summary judgment on its counterclaim which seeks a declaratory judgment that HSUSA's use of Homeserve plc's marks does not infringe on Plaintiff's marks. Having considered the Motion, the Plaintiff's response, the Defendant's reply, and the record, material issues of fact exist. Therefore, for the reasons set forth below, the Motion for Summary Judgment is denied as to Plaintiff's claims and as to HSUSA's counterclaims.

**UNDISPUTED MATERIAL FACTS**

Plaintiff owns the United States trademarks "HomeServe" and HomeServe 24" (jointly, the Marks or Plaintiff's Marks). (Ex. T to HSUSA's Motion for Summary Judgment.) Over the years, the Marks have been used as follows:



The HomeServe 24 Mark was registered October 7, 1997 and the HomeServe Mark was registered April 26, 2005. (*Id.*) The HomeServe 24 Mark has become incontestable. (Ex. S to HSUSA's Motion for Summary Judgment.)

Plaintiff is in the business of selling home repair and maintenance referral services and home repair and maintenance warranty services. Plaintiff provides its referral services and warranties for maintenance and repair service through independent contractors. (Finn Dep.[1] 29:13-31:24.) In 2001 Plaintiff was focused on marketing its products through the real estate market and the financial market. (H. Wolk[2] Dep. 47:2-14.) However, Plaintiff has since expanded to include the utility sector. (H. Wolk Dep. 47:17-20.)

Under the HomeServe 24 name, Plaintiff markets a referral service, which provides referrals to repairmen for home maintenance and repairs, along with discounts on those services.

---

[1] Finn Dep refers to the deposition of Sandra Finn, the corporate representative of Plaintiff, which is attached to HSUSA's Motion for Summary Judgment as Ex. D.

[2] H. Wolk Dep. refers to the deposition of Howard Wolk, Plaintiff's co-president, which is attached to HSUSA's Motion for Summary Judgment as Ex. G.

(Incandela Dep.[3] 20:8-24.) HomeServe is a shortened version of HomeServe 24 and refers to the same product as HomeServe 24. (Incandela Dep. 93:18-20; H. Wolk Dep. 98:14-23.) The HomeServe product is not marketed directly to consumers but through partnerships with utility companies and is usually co-branded with the utilities. (Finn Dep. 177:13-178:4; Incandela Dep. 18:20-19:1.) The HomeServe name, without the 24, is usually used verbally to refer to the HomeServe 24 product. However, the HomeServe name, without the 24, has also been used on printed materials. (H. Wolk Dep. 98:14-99:4.)

Homeserve, plc is a United Kingdom corporation. (King Dep. 7:23-9:9.[4]) Homeserve plc began as a wholly-owned subsidiary of South Staffordshire Group and was known as Home Service GB Ltd. (*Id.*) Home Service GB provided home warranty services in the utility area. In March 2001, prior to expanding into the United States, Home Service GB met with Plaintiff, in Florida, regarding the possibility of a business partnership whereby Plaintiff would act as Home Service GB's claims handler and underwriter in the United States for Home Service GB's utility warranty products. (Harpin[5] Dep. 23:9-11; 26:24-27:14.) At that meeting Home Service GB's CEO, Richard Harpin, learned of Plaintiff's product known as HomeServe 24. (Harpin Dep. 32:21-24.) Prior to that meeting Home Service GB had never considered using the name HomeServe. (Harpin Dep. 33:13-15.) However, in 2002 after that meeting, Harpin had the

---

[3]Incandela Dep. referes to the deposition of Joseph Incandela, Plaintiff's CEO, which is attached to HSUSA's Motion for Summary Judgment as Ex. F.

[4]King Dep. refers to the Deposition of Jonathan King, CEO of Home Service USA, which is attached to HSUSA's Motion for Summary Judgment as Ex. B.

[5]Harpin Dep refers to the deposition of Richard Harpin, CEO of Homeservice plc, filed as Ex. A to HSUSA's Motion for Summary Judgment.

company register the name Homeserve in the United Kingdom. (Maughan[6] Dep. 41:13-24.) Sometime in 2004, Home Service GB went through a corporate restructuring and changed its name to Homeserve plc. (HSUSA's Motion for Summary Judgment at 4, ¶13.)

Prior to the restructuring, in March 2003, Home Service GB created a wholly owned subsidiary, Home Service USA, to operate in the United States. (Harpin Dep. 40:13-15.) HSUSA provides home maintenance and repair services focused on the utility sector through a network of independent contractors. (King Dep. 25:14-19; 37:20-39:9.) HSUSA partners with utility companies, which are referred to as "affinity partners." (King Dep. 28:1-10.) HSUSA then markets its product to the utility's customers and the affinity agreement permits HSUSA to use the utility's name in its marketing materials sent to the utility's customers. (King Dep. 28:4-10.) The materials mailed to customers usually have the name of the utility on them and sometimes have the Home Service USA name on it. (King Dep. 29:13-30:1.) HSUSA also markets directly to homeowners without the benefit of an affinity partner. A homeowner who purchases HSUSA's product, whether through an affinity partner or directly from HSUSA, calls a phone number if he or she experiences problems with a covered utility and HSUSA dispatches a repairperson, who is an independent contractor, to fix the problem. (King Dep. 44:4-12.)

Setting up an affinity partnership with a utility can take a long time because it usually involves numerous meetings and careful and deliberate investigations by the utility into the companies with whom they are considering partnerships. (King Dep. 47:4-8; 52:8-20.) This process can take months to several years. (Finn Dep. 145:2-146:9.)

---

[6]Maughan Dep. refers to the deposition of Anna Maughan, Homeserve plc's Company Secretary, which is attached to HSUSA's Motion for Summary Judgment as Ex. C.

After Homeserve plc changed its name, it looked into re-branding its United States subsidiary to also use the Homeserve name. (Maughan Dep. 38:7-22.) However, during the process it learned that Plaintiff owned the United States trademarks for "HomeServe" and concluded that legally it was not possible to use the Homeserve name for its U.S. subsidiary. (*Id.*) On July 19, 2006, Homeserve plc registered, in the United States, the Home Service Plus Design mark for use in connection with insurance for home maintenance and repair services. (Ex. M to HSUSA's Motion for Summary Judgment.) On April 3, 2007, Homeserve plc also obtained a United States registration for the mark Home Service USA Plus Design (jointly, the marks shall be referred to as the Home Service Marks) for use with the identical services. (*Id.*) The Home Service Marks are:

**Home Service**   **Home Service USA**

As part of its marketing to potential affinity partners, HSUSA used a logo in business presentations that read:

**Home Service** A Member Of **Homeserve plc**
USA

(King Dep. 101:6-9.) HSUSA also used this logo on its website beginning in May or June 2005. (King Dep. 100:17-101:5.) From May or June 2005, HSUSA's website also displayed a photograph depicting the side of a building with the name "Homeserve," without the "plc" designation, on it:



5

(Ex. 11 to Plaintiff's Opposition to HSUSA's Motion for Summary Judgment (hereinafter Plaintiff's Opposition).) Nothing on the website indicates that the building is located in the United Kingdom, or otherwise not part of HSUSA. (*Id.*) HSUSA uses the website to reach potential affinity partners, potential employees, and potential customers. (King Dep. 101:24-102:11.) In its presentations to potential affinity partners and on its website, HSUSA also uses pictures of red vans with "HomeServe," without a visible "plc," written on the sides of the vans.



(Ex. 27 to Plaintiff's Opposition; Maughan Dep. 20:15-21:8.) The Homeserve name was also used by HSUSA in its emails and in job postings. (Exs. 28 & 29 to Plaintiff's Opposition.) HSUSA asserts that the purpose of using the logo and the Homeserve name in presentations and on its website was to let potential business partners know that HSUSA is part of a group of financially stable companies with significant experience in the utility sector. (King Dep. 85:19-86:2.) HSUSA does not sell any services or products under the Homeserve name.

Plaintiff became aware of HSUSA's use of the Homeserve and Home Service names in the United States no later than 2005. (Incandela Dep. 58:4-13; Finn Dep. 108:9-21.) On November 28, 2006, Plaintiff's counsel sent a cease and desist letter to HSUSA and Homeserve plc regarding the use of the Homeserve name and logo. (Finn Dep. 110:11-25.) The cease and desist letter did not raise objections to the use of the Home Service Marks, Home Service USA or Home Service. (*Id.*) HSUSA removed the photograph of the building with the Homeserve name on it from its website sometime after receiving the cease and desist letter. (Maughan Dep.

31:21-32:2.) About the same time that the cease and desist letter was sent, the parties began discussing the acquisition of Plaintiff by HSUSA or Homeserve plc.[7] (Finn Dep. 245:24-246:16.) The acquisition talks lasted through 2007 and into 2008. (*Id.*) While the acquisition discussions and negotiations were ongoing, Plaintiff did not further pursue HSUSA's use of Plaintiff's Marks or HSUSA's use of the Home Service Marks. (*Id.*; *Id.* at 247:22-24.) However, after the negotiations and discussions broke down, Plaintiff filed this suit. (*Id.*) Plaintiff has also filed a cancellation petition with the Trademark Office to cancel the Home Service Marks. (HSUSA's Motion for Summary Judgment, p. 9, ¶ 26.)

Although Plaintiff's witnesses could not give any specific examples of confusion regarding the use of the HomeServe name, Plaintiff has submitted some evidence of confusion, including an email that indicates that one of HSUSA's business partners believed that HSUSA owned the HomeServe Marks (Ex. 23 to Plaintiff's Opposition), an email that shows a potential partner of HSUSA referring to HSUSA as "HomeServe" (Ex. 13 to Plaintiff's Opposition), and several times in depositions where witnesses referred to HSUSA as "HomeServe." (*See, e.g.,* King Dep 20:24-21:3; Kliemisch[8] Dep. 221:5-222:24.)

In discussing the meaning of the Marks, Plaintiff's corporate representative testified that the Marks were meant to "create an image." (Finn Dep. 101:15-16.) The HomeServe 24 Mark is meant to be "evocative of the program [which] is available 24 hours a day . . . and its meant to describe the feeling regarding home services." (Finn Dep. 101:10-22.) The Mark is not used as

---

[7]It is not clear from the record whether HSUSA or Homeserve plc would acquire Plaintiff. However, this is not relevant to the considerations before the Court.

[8]Kliemisch Dep. refers to the deposition of Roger Kliemisch, which is Ex. 12 to Plaintiff's Opposition. However, because the entire deposition was not submitted, it is not clear who Mr. Kliemisch is.

7

a definition. (*Id.*) Plaintiff's co-president, Howard Wolk, created the HomeServe 24 name and intended for the "24" to give consumers "peace of mind" because it indicates that the services are available 24 hours a day. (H. Wolk Dep. 72:1-12.) He also testified that "HomeServe" means to him "home related service and assistance, and peace of mind." (*Id.* at 77:1-6.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a

sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

**ANALYSIS**

**I.  HSUSA is Not Entitled to Summary Judgment on Plaintiff's Claims Because Material Issues of Fact Exist as to the Likelihood of Confusion**

HSUSA asserts that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff cannot demonstrate a likelihood of confusion, a necessary element of each claim.[9] While likelihood of confusion is usually a question for the trier of fact, it may be decided as a matter of law if no material issues of fact exist. *Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000). To determine whether there is a likelihood of confusion, the Eleventh Circuit has set out seven factors for consideration: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Custom Mfg. & Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007) (citing *Frehling Enters., Inc. v.*

---

[9] The elements of each of the three counts in Plaintiff's Complaint are as follows. To succeed on a claim of trademark infringement, Count I, Plaintiff must show: (1) the marks at issue are entitled to protection and (2) the marks used by defendant are identical or so similar that they are likely to confuse consumers. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). The elements of the claim for false designation of origin under 15 U.S.C. § 1125(a), Count II of the Complaint, are: (1) the plaintiff had prior rights to the mark or name and (2) the other party adopted a mark or name that was the same, or confusingly similar to plaintiff's, such that consumers were likely to confuse the two. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997). Finally, as to Count III, in Florida, the elements for a claim of common law unfair competition based on trademark infringement are: (1) plaintiff first used a certain trademark; (2) plaintiff's trademark has acquired a special significance; and (3) defendant has used an identical or confusingly similar trademark to indicate or identify similar goods or services as the plaintiff. *American Bank of Merritt Island v. First American Bank & Trust*, 455 So. 2d 443, 445-46 (Fla. 5th DCA 1984).

*International Select Group, Inc.*, 192 F.3d 1330, 1335-41 (11th Cir. 1999)). The type of mark factor and evidence of actual confusion factor usually should be given the most weight. *Custom Mfg.*, 508 F.3d at 650. Further, any confusion must be "likely not merely possible." *Id.* at 651 (quotations and citations omitted). Because these factors do not clearly weigh in favor of a finding of no likelihood of confusion, summary judgment should be denied.

### 1. The Type of Mark

A strong mark is entitled to greater protection than a weak mark. *Frehling*, 192 F.3d at 1335. A court considers three factors in determining the strength of the mark; (1) the distinctiveness of the mark; (2) the extent of third party use of the mark; and (3) whether the mark is "incontestable." *Id.* at 1335-36; *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1259 (M.D. Fla. 2009).

#### a. Distinctiveness of the Marks

There are four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary, with generic being the weakest and arbitrary the strongest. *Id.* Registration of a mark establishes a rebuttable presumption that the mark is inherently distinctive. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007). A generic mark is one which suggests the basic nature of the service and is typically incapable of achieving service mark protection because it has no distinctiveness. *Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991). A descriptive mark identifies a characteristic or quality of a service and, because such a mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning. *Id.* A suggestive mark suggests the characteristics of the service and requires an effort of the imagination by the consumer in order to be understood as descriptive. *Id.* Because a suggestive service mark is inherently distinctive,

10

no proof of secondary meaning is required for it to be protectable. *Id.* An arbitrary or fanciful mark is also inherently distinctive because the term bears no relationship to the service and is thus protectable without proof of secondary meaning. *Id.*

HSUSA asserts that the HomeServe marks are merely descriptive and are thus only protectable if they have acquired a secondary meaning, which they have not. Plaintiff argues that the Marks are suggestive and also that the Patent & Trademark Office's registration of the Marks without the need of proof of secondary meaning establishes a presumption that the Marks are suggestive, which presumption HSUSA has not overcome. Contrary to HSUSA's assertions and its reliance on the testimony of Plaintiff's witnesses as to the meanings of the Marks, the term "HomeServe" requires an effort of the imagination to determine what services Plaintiff provides. Clearly, HomeServe is not merely descriptive like the term "vision center." *See Frehling*, 192 F.3d at 1335 (explaining that the term "vision center" is descriptive because it describes a characteristic or quality of the services or good). While the term "24" does describe a characteristic of the service, the term "HomeServe" does not directly describe any characteristic or quality of Plaintiff's service. Thus, the Marks are suggestive, not descriptive. Suggestive marks are entitled to more protection that descriptive marks.

b. *Extent of Use by Third Parties*

HSUSA asserts that there is extensive third party use of the terms "home" and "serve" in the home maintenance and repair industry, making Plaintiff's Marks weak. Plaintiff responds that there is no evidence of third party use of the actual term used in the Marks – "HomeServe." HSUSA has presented the results of a trademark search which show that several companies have attempted or have trademarked the term "Homeserve" or "Homeserv." However, almost all of those trademarks have been abandoned or cancelled. HSUSA has also presented the results of a

company name search which shows the use of the term "Homeserve" by a single employee company in Idaho and two uses of the separate terms "home" and "serve" used together in company names. Thus, while there is some third party use of the terms "home" and "serve" used together in a single word or as two separate words, the use is more limited than HSUSA argues. Consequently, the third party use of the individual terms "home" and "serve" does weaken the strength of Plaintiff's Marks but not nearly as much as HSUSA argues.

### c. Incontestability of the Marks

HSUSA concedes that the HomeServe 24 Mark is incontestable.[10] However, neither side asserts that the HomeServe Mark is incontestable.[11] A mark that is incontestable is a stronger mark. *Frehling*, 192 F.3d at 1336.

Analyzing the three factors that go to the type of mark, Plaintiff's marks are relatively strong marks. They are suggestive, the HomeServe 24 mark is incontestable, but there is some evidence of third party use. Accordingly, this factor demonstrates that Plaintiff's Marks are entitled to more than minimal protection.

### 2. Similarity of the Marks

In weighing the similarity of marks, a court considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used. *Frehling*, 192 F.3d at 1337. HSUSA asserts that the marks do not appear similar because Plaintiff

---

[10]A mark is incontestable if it has been registered with the Patent & Trademark Office for five years, the mark's holder has filed the affidavit required by 15 U.S.C. § 1065(3) with the Patent & Trademark Office, and the Patent & Trademark Office has declared the mark "incontestable." *Frehling*, 192 F.3d at 1336.

[11]The HomeServe Mark is not incontestable because it has not yet been registered for five years.

12

capitalizes both the "H" and the "S" when the marks are written out while HSUSA does not. Also, the fonts used are different, and HSUSA uses the term "Homeserve" only as part of the slogan "Home Service USA A Member Of Homeserve plc." Contrary to HSUSA's assertions, Plaintiff points to several instances where the HomeServe name was used by HSUSA outside of the slogan, including HSUSA's website which used a picture of the side of a building with the Homeserve name (without the "plc" or the rest of the slogan) on it and HSUSA's power point presentation, used in business presentations, which used a picture of a van that said "HomeServe" on it. On the van both the "H" and the "S" are capitalized. The picture of the van is also used on HSUSA's website. Thus, there is no question that at least some of HSUSA's uses of the HomeServe name by HSUSA are very similar to Plaintiff's use of the Marks. A reasonable juror could easily find that the uses are confusingly similar.

### 3. Similarity of the Services

In determining if the services are similar a court considers whether they are "the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling*, 192 F.3d at 1338. HSUSA asserts that the services offered using the HomeServe name are not similar because the services sold under the HomeServe name are sold directly to homeowners and HSUSA does not offer services to homeowners using the Homeserve name. Plaintiff, on the other hand, asserts that the services are virtually identical and that HSUSA and Plaintiff are competitors in the same market.

HSUSA markets home maintenance and repair services for utility services by selling a warranty. HSUSA partners with utilities, which allows HSUSA to use a partnered utility's name in HSUSA's marketing of warranty products to the utility's customers. HSUSA mails marketing materials with the utility's name, and sometimes its name, directly to consumers.

HSUSA also markets directly to consumers without pairing with a utility. Plaintiff also partners with utilities to market its referral services and warranty and home repair services. The HomeServe 24 product is a referral service and it is always marketed through utility companies. The HomeServe 24 product includes a warranty of the services provided by the workmen sent through the referral service. Plaintiff does not market a product under the HomeServe name but refers to the HomeServe 24 product by the shortened HomeServe name. Thus, both HSUSA and Plaintiff, under its HomeServe 24 name, are selling services that involve home maintenance and repair. The services are not identical, however. HomeServe is a referral service, which provides its subscribers with the name of a repair person, discounts the repair work, and warranties the repair work. HSUSA sells a warranty service. Thus, HSUSA dispatches the repairperson itself, instead of referring the homeowner to qualified repairpeople. While the services are not identical, they clearly are closely related services and services that ultimately result in repair work being done to the homeowner's covered utilities. Thus, a reasonable juror could easily attribute them to a single source.

### 4. Similarity of the Parties' Retail Outlets, Trade Channels, and Customers

There is no question that the HSUSA and Plaintiff market their products to the same customers – utility companies and homeowners. HSUSA argues that this does not create confusion because utility companies are sophisticated business entities that undertake extensive due diligence before entering into a contract with a marketing partner. Also, HSUSA's direct marketing to customers does not use the Homeserve name so customers will not be confused. Plaintiff responds that even a sophisticated consumer can be confused upon initial contact. *See Stilson & Associates, Inc v. Stilson Consulting Group, LLC*, 129 Fed. App'x 993, 997-98 (6th Cir. 2005) (upholding a finding of likely confusion by sophisticated customers upon initial

awareness when names are similar and the parties are in direct competition in the same market). Further, Plaintiff has presented two emails from utilities that indicate that they were confused by the names. Consequently, a reasonable juror could find that even a sophisticated customer, like a utility, could be confused upon initial contact by the parties.

### 5. Similarity of Advertising Media

Neither party advertises through traditional advertising outlets, such as newspapers, television, radio, and magazines. Both parties market their products through direct contact with affinity partners and direct mailings to homeowners. The similarity of the parties' marketing methods have been addressed in section 4, above. Therefore, this factor need not be considered.

### 6. Defendant's Intent

This factor considers whether a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation. *Frehling*, 192 F.3d at 1340. The intent of the defendant need not be conscious; "intentional blindness" will also support a finding that defendant's intent was improper. *Id.* The defendant's intent alone can justify the inference of confusing similarity. *Id.*

HSUSA asserts that there is no evidence that it acted with the intent to cause confusion and that its sole intent in using the Homeserve name was to identify its affiliation with its parent and to benefit from its parent's goodwill and reputation. Plaintiff points out that Defendants first learned of the HomeServe Mark in 2001, when HomeServe's CEO met with Plaintiff to discuss a potential partnership, and it was only after that meeting did Homeserve plc change its name to Homeserve plc and register the name in the United Kingdom. Prior to that meeting Homeserve plc had never even considered changing its name to Homeserve. After the name change, Homeserve considered rebranding HSUSA using the Homeserve name but learned that Plaintiff

15

had a trademark for the HomeServe name. Thus, Homeserve plc realized that it was not legally possible to use the Homeserve name in the United States. Despite knowing this fact, HSUSA used the Homeserve name on its website, in power point presentations to potential affinity partners, in emails, and in job postings. Based on this evidence, a reasonable juror could find that HSUSA acted with intent.

### 7. Actual Confusion

While actual confusion is not necessary to a finding of likelihood of confusion, it is the best evidence of likelihood of confusion. *E. Remy Martin & Co. v. Shaw-Ross Intern'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). HSUSA asserts that this factor weighs in favor of granting it summary judgment because there is no evidence of actual confusion. HSUSA argues that it uses the term Homeserve solely to show its affiliation with its parent. Because utility companies are highly sophisticated business entities and their negotiations with HSUSA or Plaintiff are lengthy, there is little likelihood that a utility will confuse Plaintiff's HomeServe products with HSUSA's parent company. Plaintiff, however, asserts that there is evidence of actual confusion. Plaintiff has submitted an email to HSUSA from a business partner of HSUSA. The email indicates that the sender believed that HSUSA owned the HomeServe Mark and that HSUSA had either partnered with Plaintiff or that Plaintiff was using the HomeServe name without permission of HSUSA. Plaintiff also points to the deposition testimony of several witnesses, including HSUSA's president, where the witnesses confused the Home Service and HomeServe names. Additionally, Plaintiff has also submitted an email from a potential affinity partner of HSUSA where the potential partner refers to HSUSA as Homeserve.

HSUSA, citing the Second Circuit case *Nora Beverage, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 124 (2d Cir. 2001), argues that inquiries into the relationship

between an owner of a mark and an alleged infringer do not amount to actual confusion and thus the email from the business partner who believed the Marks belonged to HSUSA is irrelevant to this factor. However, unlike in the *Nora* case, in this case there was actual confusion over who owned the Mark, the inquirer believed that HSUSA owned the HomeServe mark, while in *Nora* the inquiries regarding affiliations were directed to Nora, the actual owner of the trade dress at issue. Furthermore, in *Nora* the court found that the evidence of actual confusion was de minimus because there were only two incidents over a ten-year time period and the incidents could only be proved through the use of inadmissable hearsay. *Id.* HSUSA also argues that the only confusion that is relevant in considering this factor is confusion that actually affects purchasing decisions. However, HSUSA has not presented any binding authority to support this proposition. While Plaintiff has not presented evidence of widespread confusion, it has presented some minimal admissible evidence of actual confusion by a business partner or potential business partner of HSUSA, including evidence of confusion over who owns the HomeServe Mark. Further, the couple of incidents of confusion have occurred in a fairly short time span.

While this factor weighs slightly in favor of no confusion, it is not dispositive. Weighing all of the factors leads to the conclusion that there are material issues of fact regarding the likelihood of confusion. Therefore, summary judgment on Plaintiff's claims is not appropriate.

## II.     HSUSA is Not Entitled to Summary Judgment on its Fair Use Defense

In order to prevail on a fair use defense a defendant must establish that its use is: (1) other than as a mark; (2) in a descriptive sense; and (3) in good faith. *Intern'l Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quotation and citation omitted). HSUSA argues that it does not use the HomeServe name as a mark, but merely as a way to

convey its relationship with its parent, Homeserve, plc., and thus HSUSA's use of the Mark is merely descriptive. However, this factor alone is not dispositive. Further, the use of the picture of the van and the picture of the building, both with the Homeserve name on them, raises a question of fact as to whether HSUSA's use is not as a mark. Furthermore, to prevail on a fair use defense, HSUSA must also prove good faith. The Eleventh Circuit has held that the standard for good faith in a fair use defense is the same as the legal standard for good faith in any other trademark infringement context. *Id.* at 1274-75. Thus, as set out above, in section I.6., a material issue of fact exists as to HSUSA's intent. Accordingly, summary judgment is not appropriate.

## III. HSUSA is Not Entitled to Summary Judgment on its Counterclaim

HSUSA moves for summary judgment on its counterclaim seeking a declaration that its use of the "Home Service" and "Home Service USA" Marks do not infringe on Plaintiff's Marks. HSUSA asserts that it is entitled to summary judgment because any claim of infringement by Plaintiff is barred by laches and there is no likelihood of confusion between Plaintiff's Marks and the Home Service Marks. Because HSUSA has not met the elements of laches or established that there is no likelihood of confusion between the Home Service Marks and Plaintiff's Marks, it is not entitled to summary judgment on its Counterclaims.

### 1. Laches

To establish that Plaintiff's claims would be barred by laches, HSUSA must demonstrate (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986). Further, "because the Lanham Act does not contain a statute of limitations, the period for analogous state law claims should be used as a touchstone

for laches." *Id.* at 1546. If the claim is filed after the analogous statute of limitations period has expired, the presumption is that laches is a bar to suit. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 2008 WL 4346798, at *3 (S.D. Fla. Sept. 17, 2008). In this case, the analogous state statute of limitations would be four years.[12] *See* Fla. Stat. § 95.11; *AmBrit*, 812 F.2d at 1546 (finding that Florida's four year statute of limitations would be the pertinent statute in a Lanham Act case).

HSUSA asserts that laches bars Plaintiff's claim because: (1) Plaintiff knew of HSUSA's use of the name Home Service USA since, at the latest, August 2005; (2) yet, Plaintiff failed to previously object to the use of the Home Service Marks in the 2006 cease and desist letter, or otherwise; and (3) Plaintiff failed to include the Home Service Marks affirmatively in this action but instead simply filed a cancellation petition with the U.S. Patent & Trademark Office. Plaintiff responds that any delay is excusable because the parties were in settlement negotiations and acquisition discussions from the middle of 2005 until the beginning of 2008. Time spent in a good faith attempt to settle a matter should not count toward laches. *Southern Grouts*, 2008 WL 4346798, at *3. Thus, Plaintiff's delay has not been inexcusable; nor has it been excessive if the time the parties were negotiating is not counted in calculating the delay. Consequently, laches would not bar a claim by Plaintiff based on the Home Service Marks.

### 2. Likelihood of Confusion

HSUSA has not briefed this issue in any detail, instead relying on the arguments it makes to support the claim that its use of "Homeserve" is not likely to cause confusion. However, as stated above, issues of fact exist as to whether HSUSA'a use of Homeserve is likely to cause

---

[12]Both parties appear to agree that the pertinent statute of limitations is four years.

confusion and thus summary judgment is not appropriate. Because HSUSA relies on these arguments and has not presented any evidence to establish the strength of the Home Service Marks, any evidence regarding HSUSA's intent in using the Home Service Marks, or any evidence that there has been no confusion, summary judgment is not appropriate.

The only new argument presented in support of HSUSA's motion for summary judgment on its counterclaim is that the Home Service Marks and Plaintiff's Marks differ significantly visually. While that is true, that fact alone is not dispositive. Further, when the goods or services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1314 (N.D. Ga. 2008). The Court has already found that a reasonable juror could find that the services offered are similar. Thus, the marks need not be that similar in order to show a likelihood of confusion. Because HSUSA has not established that there is no likelihood of confusion between the Home Service Marks and Plaintiff's Marks, HSUSA is not entitled to summary judgment on its counterclaims.

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is DENIED.

DONE AND ORDERED in Miami, Florida this 20th day of January, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record